**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0536-15T2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

STEVEN RIZZITELLO,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **September 20, 2016**
>
> **APPELLATE DIVISION**

Submitted June 8, 2016 — Decided September 20, 2016

Before Judges Fuentes, Koblitz and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 14-01-00064.

Joseph D. Coronato, Ocean County Prosecutor, attorney for appellant (Samuel Marzarella, Supervising Assistant Prosecutor, of counsel; William Kyle Meighan, Assistant Prosecutor, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

FUENTES, P.J.A.D.

An Ocean County Grand Jury indicted defendant Steven Rizzitello on a single count of fourth-degree operating a motor vehicle during the period of license suspension for a second or

subsequent conviction for driving while intoxicated (DWI),[1] in violation of N.J.S.A. 2C:40-26(b). The State appeals from the order of the Law Division, Criminal Part, which admitted defendant into the Pretrial Intervention (PTI) Program and overrode the Ocean County Prosecutor's Office's (OCPO) rejection.

The prosecutor states that his decision to reject defendant's PTI application was based on: (1) defendant's history of defying court-ordered suspensions of his driving privileges for driving while under the influence of alcohol; and (2) the presumption against admission into PTI that applies to those charged under N.J.S.A. 2C:40-26(b). Consequently, the prosecutor argues the trial judge erred when she concluded that the OCPO's rejection of defendant's PTI application amounted to a patent and gross abuse of discretion.

After reviewing the record presented to the PTI judge and keeping in mind the enhanced deferential standard governing judicial review of prosecutorial decisions affecting admission into this diversionary program, we reverse. We conclude the trial judge erred when she overrode the State's rejection of defendant's PTI application because the prosecutor's decision did not constitute "a patent and gross abuse of discretion" as

---

[1] N.J.S.A. 39:4-50.

defined by the Supreme Court in State v. Roseman, 221 N.J. 611, 625 (2015) (quoting State v. Bender, 80 N.J. 84, 93 (1979)). However, we reject the OCPO's characterization of the fourth degree offense under N.J.S.A. 2C:40-26(b) as falling within the "crimes that are, by their very nature, serious or heinous and with respect to which the benefits of diversion are presumptively unavailable." Roseman, supra, 221 N.J. at 622 (quoting State v. Watkins, 193 N.J. 507, 523 (2008)). See also N.J.S.A. 2C:43-12(b); Pressler & Verniero, Current N.J. Court Rules, Guideline 3(i) on R. 3:28 at 1193 (2016).

I

On July 5, 2013, Brick Township Police Officer Steven Gerling issued defendant a summons under N.J.S.A. 39:3-40 for driving while his driver's license was suspended. On September 29, 2013, Officer Gerling reviewed defendant's driver abstract maintained by the Motor Vehicle Commission (MVC) and discovered defendant's driver's license was suspended based on his third DWI[2] conviction. What transpired next is not clear. It appears Officer Gerling contacted defendant to inform him of this discovery, and defendant voluntarily reported to the Brick Township Police Station. Defendant was then formally arrested and charged with a fourth degree crime under N.J.S.A. 2C:40-

---

[2] N.J.S.A. 39:4-50(a)(3).

26(b). He was subsequently released from custody. The record does not disclose whether defendant's release was conditioned upon the payment of bail or any other court-ordered restrictions.

An "[a]pplication for pretrial intervention shall be made at the earliest possible opportunity, including before indictment, but in any event no later than twenty-eight days after indictment." R. 3:28(h). Defendant was indicted on January 14, 2014. We infer defendant filed his PTI application outside this regulatory timeframe because the record contains a consent order, entered by the court on March 10, 2014, permitting defendant to file the PTI application no later than seven days from the date of the order. As provided for in Rule 3:28(h), the Criminal Division Manager assigned a probation officer to interview defendant and gather information to determine whether to recommend his admission into the PTI program. We derive the following facts from the PTI Director's letter denying defendant's application for admission into the program.

Defendant was sixty-one years old at the time he applied for admission into PTI in March 2014. He had been married to his current wife for eighteen years and had two adult children from two prior marriages. He graduated high school in 1971; for

the past thirty-four years defendant has been employed fulltime as a butcher for a supermarket chain. Defendant is an alcoholic. He began drinking on a daily basis when he was seventeen years old. Due to his multiple DWI convictions, defendant has been ordered by municipal courts to participate in the various alcohol addiction programs provided under N.J.S.A. 39:4-50(b) and (f).

According to his MVC driver abstract, defendant's first DWI conviction occurred on November 25, 1987. By that time, he had also been convicted three times for speeding, had an outstanding warrant for failure to appear, and his driver's license had been suspended or revoked under N.J.S.A. 39:3-40. On December 13, 1987, less than a month after his first DWI conviction, defendant was again charged with driving while his license was suspended or revoked, in violation of N.J.S.A. 39:3-40. Defendant was convicted of his second DWI offense on June 18, 1996. This second conviction resulted in a mandatory suspension of his driving privileges for two years. His driving privileges were restored on August 6, 1998.

On May 29, 2013, defendant was convicted of his third DWI.[3] On July 5, 2013, defendant was stopped by Officer Gerling for

---

[3] A person convicted of DWI for a third or subsequent time

(continued)

driving while his license was suspended. The appellate record does not reveal the circumstances that led defendant to drive his car that day. However, in its brief to the trial judge the OCPO claimed defendant's decision to drive less than two months after his third DWI conviction "show[s] defendant consciously disregarded the law stating that he was not allowed to drive. There was no compelling reason for him to be driving on that date." The trial judge agreed with the State in this respect. Without describing any particular facts, the judge noted: "As I read the facts . . . the defendant doesn't even suggest that there was any compelling reason."

By letter dated March 26, 2014, the vicinage's PTI Director recommended against admitting defendant into PTI. After

---

(continued)

> shall be subject to a fine of $ 1,000, and shall be sentenced to imprisonment for a term of not less than 180 days in a county jail or workhouse, except that the court may lower such term for each day, not exceeding 90 days, served participating in a drug or alcohol inpatient rehabilitation program approved by the Intoxicated Driver Resource Center and shall thereafter forfeit his right to operate a motor vehicle over the highways of this State for 10 years. For a third or subsequent violation, a person also shall be required to install an ignition interlock device under the provisions of P.L.1999, c.417 (C.39:4-50.16 et al.).
>
> [N.J.S.A. 39:4-50(a)(3).]

referring to the statutory factors in N.J.S.A. 2C:43-12(e), the PTI Director noted that the sanctions imposed by the court under Title 39 had thus failed to deter defendant from continuing to drive while his license was suspended. N.J.S.A. 2C:40-26(b) "was put into effect to deter people from driving with a suspended license." The PTI Director also emphasized that "[a] motor vehicle can easily become a lethal weapon in the hands of those not responsible enough to drive safely." In light of these concerns, the PTI Director concluded that accepting defendant's application "would devalue the seriousness of your actions and send the wrong message to others who have committed similar offenses."

Under the review process established by our Supreme Court, "[t]he prosecutor shall complete a review of the application and inform the court and defendant within fourteen days of the receipt of the criminal division manager's recommendation." R. 3:28(h) (emphasis added). Based on the record provided to us in this appeal, we infer the OCPO did not conduct the review mandated by rule. Based on a letter-brief dated March 11, 2015 the OCPO sent to the trial judge, we infer defendant appealed the PTI Director's denial directly to the trial court.

The matter came before the trial judge on April 15, 2015. The prosecutor argued, as she does here, that the fourth degree

offense under N.J.S.A. 2C:40-26(b) should carry a presumption against admission into PTI pursuant to Guideline 3(i). After a lengthy, on-the-record discussion with counsel, the judge directed the prosecutor to reexamine her position against admitting defendant into PTI after considering and applying the statutory factors in N.J.S.A. 2C:43-12(e).

The prosecutor submitted a letter-brief dated July 21, 2015 to the trial judge addressing the seventeen statutory factors in N.J.S.A. 2C:43-12(e). The matter returned for oral argument on September 23, 2015. In support of her decision to override the prosecutor's rejection of defendant's PTI application, the trial judge found the OCPO had minimized defendant's age and motivation to seek treatment for his alcohol dependency as factors favoring admission under N.J.S.A. 2C:43-12(e)(3). The judge also found factor four, N.J.S.A. 2C:43-12(e)(4), relevant because it requires the prosecutor to consider "the desire of the complainant or victim to forego prosecution." In this respect, the judge found:

> [T]his offense is essentially a victimless crime. As indicated, there was no other person involved. There . . . wasn't even a motor vehicle violation. There were no injuries, accidents, or other . . . aggravating factors involved in this incident.

The judge viewed defendant's addiction as "the root of his problem." Thus, the judge was critical of the prosecutor's failure to give "neither positive nor negative weight" to defendant's alcoholism under factor five and six. N.J.S.A. 2C:43-12(e)(5)-(6). Factor eight requires the prosecutor to consider "[t]he extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior." N.J.S.A. 2C:43-12(e)(8). The prosecutor argued this factor weighed heavily against defendant's admission into PTI. The judge disagreed. After reviewing defendant's driving history as reflected in the MVC abstract, the judge made the following observations:

> Here, he's not even stopped for a moving violation, but a license check. There's no question that the defendant's conduct in driving while he was revoked exhibited very poor judgment. He knew his license was suspended. He doesn't contest that. But there are no facts to support a determination by the Prosecutor that the defendant has a history of antisocial behavior. Similarly, there's no aggravating factors that demonstrate the harm to society or the need to prosecute as claimed by the State, other than the double counting of the elements of this offense. At a minimum, the defendant had to have at least two [DWI's] to be charged with this offense.
>
> Without more substantially distinguishing facts or circumstances, this does not create a history of antisocial behavior.

Ultimately, the judge viewed the prosecutor's position as mistakenly driven by the nature of the offense, without giving due consideration to defendant's individual circumstances. The judge relied heavily on her assessment of defendant's "background, character, motivation, and potential for rehabilitation." Based on these findings, the judge stated she was satisfied that defendant had "clearly and convincingly established" the prosecutor's decision to reject his application into PTI amounted "to a patent and gross abuse of discretion, which clearly subverts the underlying goals of [the] PTI Program."

## II

The purpose of the PTI Program is to provide the opportunity to certain defendants to avoid the traditional prosecutorial route by receiving rehabilitative services. Guideline 1 to R. 3:28. The Supreme Court and the Legislature created an application process requiring input and participation from both the judicial branch, through the Criminal Division Manager, Rule 3:28(b), and the executive branch, through the county prosecutor. N.J.S.A. 2C:43-12. A determination for suitability and participation in the PTI program must be made "under the Guidelines for PTI provided in Rule 3:28, along with

consideration of factors listed in N.J.S.A. 2C:43-12(e)." Roseman, supra, 221 N.J. at 621.

Once a defendant has submitted an application for admission into PTI, the Criminal Division Manager is required to "complete the evaluation and make a recommendation within twenty-five days of the filing of the application." R. 3:28(h). After the Criminal Division Manager has submitted this recommendation, "the prosecutor shall complete a review of the application and inform the court and defendant within fourteen days of the receipt of the criminal division manager's recommendation." Ibid. (emphasis added). Here, the record reflects that the OCPO did not adhere to the rule's mandate. The record only contains the prosecutor's submissions to the PTI court in response to defendant's appeal. The language in Rule 3:28(h) is both clear and emphatic. The prosecutor must independently evaluate whether a defendant should be admitted into PTI.

The Supreme Court has also acknowledged the mandatory nature of the prosecutor's participation at this phase of the PTI-admission process. "[A] PTI determination requires that the prosecutor make an individualized assessment of the defendant considering his or her 'amenability to correction' and potential 'responsiveness to rehabilitation.'" Roseman, supra, 221 N.J. at 621-22 (quoting Watkins, supra, 193 N.J. at 520). The OCPO's

failure to perform this important, legally required evaluation is unacceptable. We expect the trial court to enforce this aspect of the PTI Program's application process to ensure the reviewing judge has a complete record before deciding a defendant's challenge to the denial of his or her application. Notwithstanding this oversight, the record before us contains sufficient facts to enable us to reach a definitive determination of the PTI judge's decision to overturn the prosecutor's veto.

The State argues the PTI judge erred by not reviewing defendant's application as involving an offense that carries a presumption against admission into PTI. We disagree. As the Court explained in Roseman, both N.J.S.A. 2C:43-12(b) and Guideline 3(i) specify the offenses that carry statutory presumptions against admission into PTI. Roseman, supra, 221 N.J. at 622. Under N.J.S.A. 2C:43-12(b)(2)(b), the following types of crime carry a presumption against admission into PTI: (1) "any crime or offense involving domestic violence," as defined in N.J.S.A. 2C:25-19 of the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, including crimes committed by a defendant while subject to temporary or permanent restraints issued pursuant to the PDVA; and (2) offenses involving violence or the threat of violence, or offenses where

the defendant "is armed with and uses a deadly weapon or threatens by word or gesture to use a deadly weapon[.]" Guideline 3(i), meanwhile, creates a presumption against admission into PTI for: (3) any "first- or second-degree crime, [and] [(4)] any crime that is a breach of the public trust." Roseman, supra, 221 N.J. at 622.

The fourth degree offense that defendant is charged with committing here does not carry a presumption against admission into PTI under either N.J.S.A. 2C:43-12(b) or Guideline 3(i). As our Supreme Court has explained, "When interpreting statutory language, the goal is to divine and effectuate the Legislature's intent." Perez v. Zagami, LLC, 218 N.J. 202, 209 (2016) (quoting State v. Buckley, 216 N.J. 249, 263 (2013)). As such, "[t]here is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose; therefore, we first look to the plain language of the statute." Id. at 209-10. Here, nothing in the text of either N.J.S.A. 2C:43-12(b) or Guideline 3(i) supports classifying the fourth degree offense codified in N.J.S.A. 2C:40-26(b) as the type of crime that carries a presumption against admission into PTI. If the Legislature had intended this crime to carry a presumption against admission into PTI, it would have stated it plainly in the text of N.J.S.A. 2C:43-12(b).

This conclusion, of course, does not answer the question underlying this appeal: Whether there is sufficient basis to conclude the prosecutor's rejection of defendant's PTI application amounted to a patent and gross abuse of discretion. In our view, the PTI judge did not use the appropriate deferential standard of review when she analyzed and answered this question in the affirmative.

As the Court reaffirmed in Roseman, "PTI is essentially an extension of the charging decision, therefore the decision to grant or deny PTI is a 'quintessentially prosecutorial function.'" Roseman, supra, 221 N.J. at 624 (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). Consequently,

> the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference. Trial courts may overrule a prosecutor's decision to accept or reject a PTI application only when the circumstances "'clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion.'"

[Id. at 624-25 (citations omitted).]

To establish the prosecutor's rejection of defendant's PTI application amounted to a patent and gross abuse of discretion, a defendant must prove, by clear and convincing evidence,

> that a prosecutorial veto (a) was not premised upon a consideration of all

A-0536-15T2

> relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgement. . . . In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [Id. at 625 (quoting Bender, supra, 80 N.J. at 93).]

Here, the record does not support the PTI judge's conclusion that defendant satisfied this enhanced deferential standard of judicial review. A careful reading of the PTI judge's analysis shows the judge misunderstood the conduct the Legislature intended to deter when it adopted N.J.S.A. 2C:40-26(b). This threshold misperception tainted the judge's review of how the prosecutor applied the statutory factors in N.J.S.A. 2C:43-12. Under N.J.S.A. 2C:40-26(b), a person commits a fourth degree crime when he or she operates a motor vehicle during the period of license suspension in violation of N.J.S.A. 39:3-40, if the underlying basis of the suspension or revocation was for a second or subsequent violation of N.J.S.A. 39:4-50 or N.J.S.A. 39:4-50.4a. To establish culpability under N.J.S.A. 2C:40-26(b) and trigger the mandatory 180-day term of incarceration, the State must prove the individual was driving while serving a court-imposed term of license suspension. State v. Perry, 439 N.J. Super. 514, 525 (App. Div.), certif. denied, 222 N.J. 306

(2015). A person who drives before the MVC has administratively restored his or her driving privileges, but after completing the court-ordered suspension period, is not engaging in criminal conduct under N.J.S.A. 2C:40-26b. Ibid.

Here, the PTI judge's analysis was heavily influenced by defendant's alleged attempts to address his alcohol addiction. The judge, therefore, was critical of the prosecutor's position minimizing the significance of defendant's efforts to address his alcoholism by participating in addiction treatment programs. The judge's criticism of the prosecutor's position in this respect was misplaced in two ways. First, the only evidence of defendant's participation in alcohol treatment programs was through the Intoxicated Drivers Resource Center (IDRC), a mandatory aspect of the statutory penalties imposed by the court under N.J.S.A. 39:4-50(b). Second, defendant's alcohol addiction did not play any role in his decision to drive his car in defiance of a court-ordered ten-year suspension of his driving privileges for his third DWI conviction. Defendant was sober and in complete control of his faculties when he was stopped by Officer Gerling on July 5, 2013.

In State v. Sylvester, we rejected the defendant's collateral attack of her conviction under N.J.S.A. 2C:40-26(b). 437 N.J. Super. 1, 7 (App. Div. 2014). In the course of our

analysis of this issue, we noted that "[t]his was not a case in which an unforeseen emergency compelled defendant to undertake a course of action that she would not have taken under ordinary circumstances." Ibid. Thus, "[a]bsent any mitigation, [the defendant's] actions can be reasonably characterized as contemptuous of the court's authority." Ibid.

Here, defendant's defiance of court-ordered suspensions reflects the same contempt of the court's authority. Defendant has not presented any facts that would mitigate or explain his decision to drive his car less than two months after his license was suspended for his third DWI conviction. The record also shows defendant has multiple convictions of driving while suspended in violation of N.J.S.A. 39:3-40. In short, his decision to drive while his license was suspended was not an isolated or aberrant event. So far, the sanctions available under Title 39 have not deterred defendant from driving while suspended for a DWI conviction.

"The primary purpose behind New Jersey's drunk-driving statutes is to curb the senseless havoc and destruction caused by intoxicated drivers." State v. Tischio, 107 N.J. 504, 512 (1987). Since the Court decided Tischio nearly thirty years ago, the penalties for driving while intoxicated have consistently increased in severity as a means of deterring "the

senseless carnage on our highways" caused by those who drive drunk. Ibid. (quoting State v. D'Agostino, 203 N.J. Super. 69, 72 (Law Div. 1984)). The Legislature's decision to criminalize the act of driving while one's license is suspended for a second or subsequent DWI conviction is the latest addition to this arsenal of deterrence.

> The Legislature's purpose in requiring a mandatory period of "imprisonment" for this offense, with no possibility of parole, is also clear. Alternatives to jail, like the inpatient drug rehabilitation program involved in [State v. French, 437 N.J. Super. 333 (App. Div. 2014)], or the home detention and community service programs at issue here, do not protect the public in the same way as incarceration. This public safety consideration is especially relevant in the case of a defendant who loses his or her driving privileges for DWI, but then continues to drive despite the license suspension.
>
> [State v. Harris 439 N.J. Super. 150, 160 (App. Div. 2015).]

The PTI judge's decision to override the prosecutor's rejection of defendant's PTI application failed to give due deference to these public policy considerations. The judge also failed to defer to the prosecutor's consideration of defendant's history of Title 39 violations; these violations reveal defendant's multiple instances of defiance of court-ordered suspensions of his driving privileges. In light of these

factors, the prosecutor's rejection did not constitute a patent and gross abuse of discretion.  Roseman, supra, 221 N.J. at 627.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION