NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2474-15T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JUAN A. FERRER, JR.,

 Defendant-Appellant.

________________________________

 Argued July 18, 2017 – Decided August 21, 2017

 Before Judges Ostrer and Leone.

 On appeal from Superior Court of New Jersey,
 Law Division, Burlington County, Indictment
 No. 15-03-0210.

 Jordan G. Zeitz argued the cause for
 appellant.

 Jennifer B. Paszkiewicz, Assistant
 Prosecutor, argued the cause for respondent
 (Scott A. Coffina, Burlington County
 Prosecutor, attorney; Ms. Paszkiewicz, of
 counsel and on the brief; Linda Rinaldi, Legal
 Assistant, on the brief).

PER CURIAM
 Defendant Juan A. Ferrer, Jr. appeals the April 29, 2015

denial of his application for pretrial intervention (PTI). We

affirm.

 I.

 The police report alleged the following facts. On October

5, 2014, a resident reported to police dispatch that his Palmyra

apartment was being burglarized. The resident was in Philadelphia

but able to view on his cellphone the video from his home

surveillance system. He reported that three suspects broke into

his residence and that at least one of the suspects appeared to

be armed and pointed a gun at his dog.

 Upon arriving at approximately 4:57 a.m., Sergeant Timothy

Leusner and Patrolman Ludlow observed individuals moving around

and using flashlights inside the residence. The officers requested

backup to set up a perimeter. At 5:05 a.m., dispatch advised that

suspects had reportedly exited the rear of the residence and fled.

But, as the officers approached the rear of the residence, the

back door opened and a flashlight shined into Leusner's face. He

ordered the suspect to show his hands. The suspect instead slammed

the door shut.

 Two suspects attempted to exit through second- and third-

story windows but retreated inside upon observing the police

perimeter. The pair later attempted to flee via the front door,

 2 A-2474-15T2
but officers apprehended them. One suspect was defendant. The

second suspect identified himself as Joseph R. Montez, but was

found to be co-defendant Joseph R. Rios. Both defendants denied

being accompanied by a third perpetrator and no additional suspect

was discovered.

 Inside the back door, police later recovered a bag containing

items from the residence, including watches, jewelry, and other

property. The officers also noticed a door and door jamb were

damaged, and the home security system had been ripped from the

wall and had its wires severed. A vehicle registered to co-

defendant Rios was located on the street near the residence.

 Defendant and Rios were charged with third-degree burglary,

N.J.S.A 2C:18-2(a)(1); third-degree attempted theft by unlawful

taking, N.J.S.A. 2C:5-1(a) and N.J.S.A. 2C:20-3(a); third-degree

resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2); and fourth-

degree criminal mischief, N.J.S.A. 2C:17-3(a)(1). Rios was also

charged with third-degree hindering apprehension, N.J.S.A. 2C:29-

3(b)(4).

 Defendant applied for admission to PTI. An April 29, 2015

letter stated that the Superior Court's Criminal Division Manager

 3 A-2474-15T2
("CDM") recommended against PTI.1 The CDM found "the crime is

such that the public need for prosecution outweighs the value of

supervisory treatment," citing N.J.S.A. 2C:43-12(e)(7), (14), and

(17). The CDM explained that "[b]urglary of a home is a very

serious offense," because "[t]here is always a great potential for

violence if the perpetrator is interrupted in the middle of the

crime," and because of the "fear and anxiety it causes its victims

and society in general." The CDM noted that "[t]he sanctity and

security of a person's home has been violated" and that the

burglars had damaged the resident's property. The CDM stated

"[s]uch a crime is worthy of vigorous prosecution" in order "to

deter this defendant and others."

 The CDM further noted the victim "completely opposed" PTI,

citing N.J.S.A. 2C:43-12(e)(4). Finally, the CDM found that as

"defendant [had] not presented any compelling reasons which may

justify his admission" into PTI, "the needs and interests of

society" would be best served by continued presentation. See

N.J.S.A. 2C:43-12(e)(7), (15).

 On May 6, 2015, defendant appealed "the denial" of his

application. The prosecutor filed a brief stating "[t]he

1
 The letter was signed by a case supervisor/parole officer and a
team leader. The prosecutor refers to this as the letter from the
"PTI director."

 4 A-2474-15T2
Prosecutor's Office did not separately reject defendant; however,

it is the State's position the rejection of the PTI Director for

the Criminal Division was appropriate, and must be reviewed

pursuant to an abuse of discretion standard."2

 After reviewing submitted papers and hearing oral arguments,

the trial court denied defendant's appeal on June 8, 2015. The

2
 Defendant does not challenge this procedure. However, the
procedure improperly diverged from the three-step process required
by Rule 3:28(h): (1) "The criminal division manager shall complete
the evaluation [of the defendant's PTI application] and make a
recommendation," (2) "[t]he prosecutor shall complete a review of
the application and inform the court and defendant [of the
prosecutor's decision and reasoning] within fourteen days of the
receipt of the criminal division manager's recommendation," and
(3) the defendant may appeal by filing a motion in the trial court
"within ten days after the [prosecutor's] rejection." Ibid.
(emphasis added). The CDM's letter mistakenly said that
defendant's motion to the trial court "must be filed within ten
(10) days of the date of this letter."
 Moreover, the prosecutor mistakenly waited to evaluate
defendant's application until after the defendant had filed a
motion with the trial court. "The language in Rule 3:28(h) is
both clear and emphatic. The prosecutor must independently
evaluate whether a defendant should be admitted into PTI." State
v. Rizzitello, 447 N.J. Super. 301, 311 (App. Div. 2016). "The
[prosecutor]'s failure to perform this important, legally required
evaluation is unacceptable." Ibid. As explained further infra,
"policy determinations, such as which offenses to aggressively
prosecute, fall within the domain of the prosecutor, not the
judiciary" or judicial employees such as the CDM. State v. Waters,
439 N.J. Super. 215, 232 (App. Div. 2015) (quoting State v. Kraft,
265 N.J. Super. 106, 116 (App. Div. 1993)). "Notwithstanding this
oversight, [because] the record before us contains sufficient
facts" and the prosecutor adopted the CDM's rationale, we can
decide the challenges defendant does raise. Rizzitello, supra,
447 N.J. Super. at 311; see State v. Nwobu, 139 N.J. 236, 250
(1995) (holding a "prosecutor [may] adopt the PTI director's
reasoning as his own").

 5 A-2474-15T2
court found all appropriate factors were considered and no

inappropriate factors were considered.

 On October 6, 2015, defendant pleaded guilty to third-degree

burglary and fourth-degree resisting arrest by flight. He was

sentenced to two years' probation. Defendant was also ordered to

pay $3000 in restitution to his victims.

 Defendant appeals the denial of PTI. See R. 3:28(g). He

argues:

 THE LAW DIVISION SHOULD HAVE ADMITTED
 APPELLANT INTO THE PRETRIAL INTERVENTION
 ("PTI") PROGRAM BECAUSE APPELLANT WAS A FIRST-
 TIME OFFENDER WHO WAS NOT CHARGED WITH ANY
 CRIMES CREATING A PRESUMPTION AGAINST SUCH
 ADMISSION AND BECAUSE THE CRIMINAL DIVISION
 MANAGER'S REASONS FOR REJECTING HIS PTI
 APPLICATION (WHICH WERE LATER ADOPTED BY THE
 STATE) WERE SPECULATIVE, LADEN WITH
 GENERALITIES, BARE ON SUPPORTING FACTS, OVER
 INCLUSIVE, AND CONTRARY TO WELL-ESTABLISHED
 LAW.

 II.

 The PTI program is governed by N.J.S.A. 2C:43-12 to -22, Rule

3:28, and the Guidelines for Operation of Pretrial Intervention

in New Jersey, reprinted after Rule 3:28 in Pressler & Verniero,

Current N.J. Court Rules (2017) [hereinafter Guidelines].

"N.J.S.A. 2C:43-12(e) lists seventeen non-exclusive factors to be

considered by the criminal division manager and prosecutor in

determining admission into [PTI]." State v. K.S., 220 N.J. 190,

 6 A-2474-15T2
197 (2015). Courts must "presume that a prosecutor considered all

relevant factors, absent a demonstration by the defendant to the

contrary." State v. Wallace, 146 N.J. 576, 584 (1996).

 "Deciding whether to permit diversion to PTI 'is a

quintessentially prosecutorial function.'" Waters, supra, 439

N.J. Super. at 225 (quoting Wallace, supra, 146 N.J. at 582).

"Prosecutorial discretion in this context is critical for two

reasons. First, because it is the fundamental responsibility of

the prosecutor to decide whom to prosecute, and second, because

it is a primary purpose of PTI to augment, not diminish, a

prosecutor's options." Ibid. (quoting Nwobu, supra, 139 N.J. at

246). "Accordingly, 'prosecutors are granted broad discretion to

determine if a defendant should be diverted' to PTI instead of

being prosecuted." Ibid. (quoting K.S., supra, 220 N.J. at 199).

 "Thus, the scope of review is severely limited." Ibid.

(quoting State v. Negran, 178 N.J. 73, 82 (2003)). "Reviewing

courts must accord the prosecutor '"extreme deference."'" Ibid.

(quoting Nwobu, supra, 139 N.J. at 246). "[I]nterference by

reviewing courts is reserved for those cases where needed 'to

check . . . the "most egregious examples of injustice and

unfairness."'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div.

2014) (quoting Negran, supra, 178 N.J. at 82), certif. denied, 222

N.J. 18 (2015).

 7 A-2474-15T2
 We apply the same standard as the trial court, and review its

decision de novo. Waters, supra, 439 N.J. Super. at 226. We must

hew to that standard of review.

 "In order to overturn a prosecutor's rejection, a defendant

must 'clearly and convincingly establish that the prosecutor's

decision constitutes a patent and gross abuse of discretion.'"

Ibid. (quoting State v. Watkins, 193 N.J. 507, 520 (2008)).

 "Ordinarily an abuse of discretion will be
 manifest if defendant can show that a
 prosecutorial veto (a) was not premised upon
 a consideration of all relevant factors, (b)
 was based upon a consideration of irrelevant
 or inappropriate factors, or (c) amounted to
 a clear error in judgment. . . . In order for
 such an abuse of discretion to rise to the
 level of 'patent and gross,' it must further
 be shown that the prosecutorial error
 complained of will clearly subvert the goals
 underlying Pretrial Intervention."

 [Wallace, supra, 146 N.J. at 583 (quoting
 State v. Bender, 80 N.J. 84, 93 (1979)).]

 III.

 The prosecutor ultimately adopted the CDM's reasoning, which

recommended rejection primarily on the nature of the offense of

burglary and the victim's opposition to admitting defendant into

the program. Defendant claims the CDM improperly established a

per se rule of exclusion when referencing the "potential for

violence" created by the crime of burglary. Here, by contrast,

defendant has not demonstrated the CDM engaged in a categorical

 8 A-2474-15T2
denial. Rather, the CDM's letter indicated a review of the nature

of the offense, the desires of the victim, and the defendant's

"background and circumstances." Cf. State v. Caliguiri, 158 N.J.

28, 33 (1999) (finding an improper categorical rejection of PTI

where "the prosecutor relied on a purported legislative belief

that drug offenses near a school were 'deserving of enhanced

punishment' and 'too serious for Pre-Trial Intervention'").3

 Moreover, the CDM could properly emphasize the seriousness

of defendant's crime. In Kraft, supra, the prosecutor similarly

denied PTI based on "the nature of the offense" of third-degree

burglary of an apartment. 265 N.J. Super. at 10. The prosecutor

found that "'a burglary of a dwelling is always a most serious

offense'" for the same reasons given by the CDM here. Id. at 116.

We found "the Prosecutor's reasons for denying defendant

admittance into PTI were entirely unassailable." Id. at 117. We

explained:

 It cannot reasonably be disputed that the
 burglary of a residence is a serious offense.
 Nor can it be earnestly debated that such an
 offense accounts for a legitimate source of
 fear and anxiety on the part of homeowners.
 Undoubtedly, these already existent and

3
 Defendant argues Caliguiri, supra, established a presumption in
favor of PTI for third-degree offenses. Rather, Caliguiri merely
ruled that where there is a presumption against PTI, "the weight
of the evidence to rebut the presumption against PTI [for a third-
degree offense] need not be as great as if the defendant had been
charged with a second-degree offense." 158 N.J. at 44.

 9 A-2474-15T2
 justified fears would only be heightened if
 the public were to detect a lack of vigorous
 prosecution, whether real or perceived,
 relating to such offenses. In light of these
 factors, the Prosecutor's conclusion that the
 public interest would best be served in this
 matter by prosecution rather than by diversion
 can hardly be faulted.

 [Id. at 116.]

 In Kraft, supra, the trial court overturned the prosecutor's

decision because "'nobody was home, it's not that he was in the

house threatening somebody or there was a potential for violence.'"

Id. at 117 (emphasis omitted). We reversed, reasoning:

 While it is true that there may have been
 no one present in the particular dwelling that
 defendant burglarized, the record indicates
 that this residence was part of an apartment
 complex and thus, was surrounded by
 neighboring units. . . . Under such
 circumstances, there clearly existed a
 significant potential for violence, which
 could easily have been realized if one of the
 victim's neighbors had interrupted the
 perpetrators in the middle of their crime.
 Thus, not only did the trial court err in
 attempting to downplay the severity of the
 particular offense involved here, its
 rationale for doing so was deficient.

 [Ibid.]

 Here, defendant similarly burglarized an apartment, raising

the possibility occupants in neighboring apartments "could hear,

and possibly even see" the burglars, just as the police later saw

the burglars from outside the apartment. Ibid. Thus, there

 10 A-2474-15T2
clearly existed a potential for violence. Indeed, one burglar

appeared to be armed with a handgun gun which he pointed at the

resident's dog. Moreover, rather than comply with the officers'

orders to surrender peaceably, the burglars engaged in a standoff

before running outside of the apartment.

 Defendant notes the CDM stated that "defendant has not

presented any compelling reasons which may justify his admission

into [PTI]." Defendant asserts this was a reference to Guideline

3(i), which provides PTI is not ordinarily granted for certain

categories of offenses, creates a presumption against admission,

and requires an applicant to show "compelling reasons justifying

the applicant's admission." However, there is no indication the

CDM, the prosecutor, or the trial court applied a presumption

against admission. In any event, "[b]ecause burglary of a home

is similar to robbery, in the sense that it raises the public's

concern regarding the threat of personal safety, it is a crime

that implicates Guideline 3(i)." State v. Baynes, 148 N.J. 434,

446 (1997) (citing Kraft, supra, 265 N.J. Super. at 117); see

Guideline 3(i) (providing PTI should not ordinarily be granted for

crimes "deliberately committed with violence or threat of

violence"). That is particularly true here, as one of the robbers

was carrying and pointing a gun. As noted by the trial court,

this burglary was "on the more extreme end factually."

 11 A-2474-15T2
 Defendant further asserts the CDM placed undue weight on the

victim's desires. However, N.J.S.A. 2C:43-12(e)(4) requires

prosecutors and CDMs to consider "[t]he desire of the . . . victim

to forego prosecution," and the victim's opposition to PTI "is an

appropriate factor to consider under Guideline 3 and N.J.S.A.

2C:43-12(e)(4)," State v. Imbriani, 291 N.J. Super. 171, 180 (App.

Div. 1996). Given that the robbers broke into the victim's home,

pointed a gun at his dog, attempted to steal his possessions, and

damaged his apartment, the victim had valid reasons to oppose PTI,

which were properly considered and weighed. In any event, the

Legislature and Rule 3:28 "leave the weighing process to the

prosecutor or program director." Wallace, supra, 146 N.J. at 585-

86; accord Waters, supra, 439 N.J. Super. at 234.

 Defendant cites his age, education, children and motorcycle

injuries, and claims he was under the influence leading up to the

burglary, but those factors did not require PTI. The CDM and

prosecutor are presumed to have considered those factors. Wallace,

supra, 146 N.J. at 584. Indeed, the rejection letter stated that

"defendant's application for [PTI] has been reviewed" and the

"background and circumstances provided by" defendant have been

"taken into consideration." See id. at 588.

 We agree with the trial court that defendant did not show the

denial of PTI (1) "was not premised upon a consideration of all

 12 A-2474-15T2
relevant factors"; (2) "was based upon a consideration of

irrelevant or inappropriate factors"; or (3) "amounted to a clear

error in judgment." Id. at 583. Defendant certainly did not

establish a "patent and gross abuse of discretion." Ibid.

 Affirmed.

 13 A-2474-15T2